cc

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF PENNSYLVANIA

3 2/5/01 km Kosik

843

00-1497

Joseph Bielawski,

Petitioner,

v.

United States of America,

Respondents,

FILED

MAY 2 2 2000

MICHAEL E. KUNZ, Clerk

By. CMC Dep. Clerk

MOTION TO MODIFY SENTENCE

28 USC § 2255

18 USC § 3582(c)(2)

92 CR - 486-2

00CV2596

RECEIVED SCRANTON

NOV 2 7 2000

MARY E. D'ANDREA, CLERK

PER _______ DEPUTY CLERK

I. MOTION

1. Petitioner Bielawski believes he can proceed under 28 USC § 2255 [18 USC§ 3582(c)(2) ] but he humbly requests this Honorable Court construe this petition liberally. And if another statute is applicable please apply.

> "A petitioner mounting a collateral attack upon a sentence bears the burden of establishing by a preponderence of the evidence that he is entitled to relief." United States v. DiCarlo 575 F. 2d 952, 955 (1st Cir.) cert. Denied, 439 US 834-99 S.Ct. 115 58 L.Ed. 2d 129 (1978)

Sentences may be modified in §2255 actions in limited circumstances:

> [A] collateral attack on a final judgment in a federal criminal case is generally available under §2255 only for a constitutional error or fact that constitutes a "fundamental defect which inherently results in a complete miscarriage of justice." See United States v. Flenory 875 F.2d 10

The weight of authority endorses the theory that a petitioner who can demonstrate that the Court relied on materially false information at sentencing is entitled to collateral relief.
At the time of sentencing in this case there was no indication that the sentencing Judge Hon. Stewart Dalzell used misinformation rather he relied on the accurate information relative to the necessity of a drug program based on the PSI. The distinction between an inaccurate "prediction concerning an agency's discretion" and an " objective ascertainable error" is emphasized in

King v. Hoke 825 F.2d 720,724-25 (2d Cir. 1987)
The langauge of this argument comes from United States v. Hollenbeck 932 F.Supp. 53 (N.D.N.Y. 1996) which petitioner Bielawski believes is relevant here, therefore he adopts it as a frame of reference.

2. The limit of the guidelines is that the plea argreement must not frustrate the purposes of sentencing USSG § 6B1.2 . Here the sentence is frustrated by the BOP in their NOT implementing 18 USCA § 3621(e)(2)(B); 28 CFR § 550.58- See Roussaus v. Menifee 122 F.3d 159 (3rd Cir. 1997). If the sentence is frustrated than so is the plea agreement.

The sentence recommendation of the Honorable Court included the 500 Hour Drug Program and any or all benefits derived thereof. By the actions of the BOP, who appear to have usuroed the Courts intent in sentencing under the guise of discretion have altered the circumstances and the Courts' legitimate expectations/predictions at the **time of sentence.** The plea and therefore the sentence becomes moot under the legal theory of Boykin v. Alabama (1969) 395 U.S. 238,23 L.Ed. 2d 274,89 S.Ct.1709.

> " Defendant can never knowingly and intelligently waive right to appeal or collaterally attack sentence that has not been imposed; such a waiver is by definition uninformed and unintelligent and cannot be voluntary and knowing."
> United States v. Raynor 989 F. Supp. 43 (D.C.C. 1997)

The very purpose for the Sentencing Guidelines was to assure more uniformity in criminal sentencing. That was the intent of Congress and the intent of the guidelines. See 28 USC §§991(b)(1)(B),994 (f); United States Sentencing Commission,Guideline Manuel, Chapter One - Introduction, Part A at 2 (Nov. 1997); S. Rep. no. 225, at 150-51 (1984),reprinted in USCCAN 3182,3334; United States v. Ready 82 F.3d 551,556 (2d Cir.1996). What the government seeks to do through the appeal waiver provision is inconsistant with the goals and intent of Congress and the goals and intent of the Sentnencing Commission. It will insulate from appellate review erroroneous factual findings, interpretations and applications of the Guidelines by trial Judges and thus ultimately,it will undermine uniformity. The **integrity** of the system depends on the ability of appellate courts to correct sentencing errors, but the waiver provision.... inevitably will undermine the improtant role

of the courts of appeals to correct errors in sentencing,a role that Congress has specifically set out for them. The condition sought to be imposed by the government is inherently unfair;it is a one-sided contract of adhesion; it will undermine the error correcting function of the Courts, Courts of Appeals in sentencing; it will create a sentencing regime where courts ,courts of appeals will never have the opportunity to review an illegal sentence, or a sentence that has no **basis in fact** unless those sentencing errors work to the disadvantage of the government. Such a result is inconsistant with what Congress intended when it created the Sentencing Commission and the Sentencing Guidelines.

The Honorable Court nor petitioner were not aware that there would be a problem with the 140 month sentence,[ with the 500 hour drug program recommendation]. The government now wants to lock petitioner Bielawski into a plea bargain/sentence where he not only waived his rights, but based upon subsequent findings of fact that the parameters of the sentence will not be carried out eviscerates the provisions of any plea agreement based upon the above sited law and common sense. See Kilpatrick v. Houston 36 F.Supp. 1328 (11th Cir. ) for a frame of reference. In essence the time starts tolling when petitioner is notified of the damage.[Non-Compliance of the recommendation] Here the damage is extensive and related to a libert-based interest. Half-Way House Placement 28 CFR § 550.57 (6) Months; early release (up to 12 months) 18 UASA § 3621 (e)(2) (B), 28 CFR §550.58.

Petitioner has been informed he can not get the 500 hour drug program because of the (2) point enhancement.

Under the theory of Santobello v. New York (1971) 404 U.S.257,30 L.Ed 2d 427, 92 S.Ct. 495 where it states the plea agreement cannot be breached without a violation of due process. In this instant case it takes that rationale one step further,the specific performance of the sentence was frustrated. If the terms of the sentence are not carried out per Court Order there gives an appearence of some type of manipulation of that sentence. The 500 Hour Drug Program is an inducement to accept a plea, this is nullified by the BOP.

## II.CONCLUSION

Petitioner Bielawski believes the language in United States v.

Hollenbeck 932 F.Supp. 53, where District Court Senior Judge Munson held that: P.56

"[1,2] The Court believes that it can consider this motion pursuant to 18 USC § 3582(c)(2)...."

Under 18 USC § 3553(a)(2)(C) that could satisfy both the need to protect society from a defendants future crimes and the need to rehabilitate him, § 3553(a)(2)(D).

In United States v. Marsh 733 F.Supp. 90,94 (D. Kansas)

("[A] sentence will be vacated if the challenged information is materially false or unreliable and demonstratably made the **basis** for the sentence..".) The information here in this instant matter is materially false or unreliable that was the basis for the sentence.

See also Parks v. United States 832 F2d 1244,1246(11thCir. 1997) ("Due process protects a defendants right not to be sentenced on the basis of false information and invalid premise")

## III. RELIEF REQUESTED

Petitioner Bielawski humbly and respectfullt comes before this Honorable Court to seek redress because the BOP has exceeded it's statutory authority by excluding prisoners from eligibility based solely on §2D1.1(b)(1) from denying participation of 18 USCA § 3621 (b),(e)(2); (e)(2)(B). See attached exhibits A

The Honorable Court magnanimiously sentenced petitioner to 140 months with the availability for the 500 drug program. This aspect of sentencing was circumvented, thus this litigation. Being Half-Way House release under §3624(c) [ 28 CFR § 550.57] and the 500 Hour Drug Program § 3621(e) [ 28 CFR § 550.58] are inter-fered with petitioner requests a "downward departure' under Koon v. United States US ,116 S.Ct. 2035,135 L.Ed. 2d 392(1996) [ 18 USC § 3553(b)]: Williams v. United States 505 U.S. 193,205- 112 S.Ct. 1112,1121,22- 117 L.Ed. 2d 341 (1992) To reflect the true intent of The Honorable Stewart Dazells' sentence.

**(1) 18 months to insure that the Courts' intent is carried out.(12) months off sentence 28 CFR § 550.58 (1995) (6) months half-way house placement 28 CFR § 550.57**

**(2) Transfer this motion to 28 USC § 2241 (d) to compel the BOP to afford petitioner the 500 Hour Drug Program 18 USCA §§ 3621(b);(e)(2);(e)(2)(B) and benefits thereof.**

28 USC §1746 Respectfully, [signature]

# CERTIFICATE OF SERVICE

I,Joseph Bielawski do hereby swear under penalty of perjury that I believe all allegations contained herein to be true to my best knowledge and beliefs and that I have mailed copies of these legal moving papers to the following via United States Postal Services-

(1) Clerk of Court,Eastern Dist. of PA.
United States District Court
601 Market St. Rm. 2609
Philadelphia, PA. 19106-1784

(2) United States Attorneys Office
615 Chestnut Street Suite 1250
Philadelphia, PA. 19106-4476

FILED
MAY 2 2 2000
MICHAEL E. KUNZ, Clerk
By [signature] Dep. Clerk

Respectfully,
[signature]
Mr. Joseph Bielawski
Petitioner Pro-se

Dated:
In accordance with 28 USC §1746

U.S. Department of Justice
Federal Bureau of Prisons

# Operations Memorandum

Property of
LSCI Allenwood

**NUMBER:** 017-00 (5164)
**DATE:** 3/1/2000
**SUBJECT:** Release Procedures for Inmates Eligible for Sentence Reduction Pursuant to 18 U.S.C. § 3621(e) in the Tenth Circuit (Categorization of Offenses)

**EXPIRATION DATE:** 3/1/2001

1. **PURPOSE AND SCOPE.** To revise sentence reduction procedures pursuant to 18 U.S.C. § 3621(e) for inmates who complete the residential drug abuse treatment program (RDAP) in light of the Tenth Circuit Court of Appeals decision, *Ward v. Booker*, __F.3d__, 2000 WL 37983 (10th Cir., January 19, 2000).

Pursuant to 18 U.S.C. § 3621(e), an inmate who is sentenced for a nonviolent offense, and is determined to have a substance abuse problem, and completes a residential drug abuse treatment program successfully during his or her current commitment may be eligible for a reduction in sentence by a period not to exceed 12 months.

In *Ward v. Booker*, the Tenth Circuit Court of Appeals held that the Bureau of Prisons may not categorically exclude from sentence reduction eligibility prisoners convicted of **nonviolent offenses whose sentences were enhanced because of firearms.**

The Tenth Circuit covers all facilities in Wyoming, Utah, Colorado, Kansas, New Mexico, and Oklahoma.

2. **DIRECTIVES REFERENCED**

| | |
|---|---|
| PS 5162.04 | Categorization of Offenses (10/9/97) |
| PS 5330.10 | Drug Abuse Program Manual, Inmate (6/1/95) |

3. **APPLICABILITY OF *WARD* DECISION.** Staff should consider the following general guidelines:

a. This Operations Memorandum applies to all inmates currently confined in the Tenth Circuit, as well as all inmates who completed RDAP in the Tenth Circuit on or after January 19, 2000

person sought to be coerced was the victim of the crime, as opposed to a third party whose complicity the perpetrator sought to ensure," the court explained. "While we have found no case directly on point, inasmuch as most of the cases involve the time and space elements that [defendant] Yelverton posits, nothing in the language of the Guidelines or the case law suggests that a weapon can only be 'otherwise used' in those circumstances. Instead, the rationale of the weight of authority focuses on the use of the gun or other dangerous weapon to instill fear to promote commission of the underlying crime," the court said. (*United States v. Yelverton*, D.C. Cir., No. 99-3032, 12/10/99)

**Sentencing—Reduction in Prison Time for Completion of Drug Treatment Program—Prison Bureau Regulations—'Nonviolent Offense'**

In an unsigned, one-sentence order, the U.S. Court of Appeals for the Eleventh Circuit Dec. 10 affirmed a district court's decision that a Bureau of Prisons' regulation categorically excluding certain prisoners from eligibility for sentence reductions on the basis of efforts to overcome their drug problems, 28 CFR 550.58 (a)(1)(iv)(B), exceeds the BOP's authority under the statute the regulation was designed to implement. The statute, 18 USC 3621(e)(2)(B), allows the BOP to grant a sentence reduction of up to one year to a prisoner who was "convicted of a nonviolent offense" and completes a treatment program for a substance addiction or abuse problem. An earlier regulation automatically excluded any prisoner whose offense was a "crime of violence" and defined this category to include any crime for which the sentence was enhanced under Section 2D1.1(b)(1) of the U.S. Sentencing Guidelines. That regulation met with judicial disapproval in the Eleventh Circuit and elsewhere. The new regulation excludes any prisoner whose offense "involved the carrying, possession, or use of a firearm." The district court in this case held that the new regulation's categorical approach made it as bad as the earlier one. The Eleventh Circuit affirmed "for the reasons stated" by the district court. (*Kilpatrick v. Houston*, 11th Cir., No. 99-10862, 12/10/99, affirming 36 F.Supp.2d 1328, 64 CrL 453)

**Statutes and Ordinances—Using Minor in Avoiding Capture for Drug Offense—Child Abuse**

Throwing a young child toward arresting officers, in an attempt to avoid apprehension for drug trafficking, violates the federal statute that makes it unlawful to "use . . . a person under eighteen years of age to assist in avoiding . . . apprehension for" drug trafficking, 21 USC 861(a)(2), the U.S. Court of Appeals for the Fifth Circuit held Dec. 3. The defendant argued that "use" in this context means "taking advantage of a juvenile's lack of intellect or reasoning ability." Judge Rhesa Hawkins Barksdale said that this idea is covered by other verbs in the statute, such as "persuade," so the defendant's interpretation would render the word "use" superfluous. The court also said that the defendant's reading is "a far cry from" the normal definition of "use," which Congress presumably intended. (*United States v. Cyprian*, 5th Cir., No. 98-30709, 12/3/99, affirming 63 CrL 274)

A majority of the Utah Court of Appeals held Dec. 2 that a defendant violated the state's child abuse statute

9-month-old child over the railing of a third-story apartment balcony in the presence of the child's mother. The statute requires infliction of a "physical injury," which is defined in subsection (1)(c) to include minor injuries such as bruises and "any other condition which imperils the child's health or welfare and which is not a serious physical injury as defined in subsection (1)(d)." Associate Presiding Judge Pamela T. Greenwood, writing for the majority, rejected the defendant's argument that the catch-all prong of the definition requires a physical impact. "Nowhere in the statute does the Legislature indicate physical injury is limited only to conditions resulting from a physical impact," the majority said. Indeed, it pointed out, the statutory definition of "serious physical injury" includes severe emotional harm and other conditions that can result from nonphysical abuse. Noting that the ordinary and accepted meaning of "imperil" is "endanger," the majority said that "[e]ndangerment is precisely what the trial court found occurred in this case when defendant, for some unfathomable reason, suspended an infant by his arms over a third-story balcony railing for several minutes." It concluded that under the statute, "physical injury can include acts that imperil or threaten a child's health or welfare without an actual physical impact on the child." Judge Gregory K. Orme concurred in the result without opinion. (*Provo City, Utah v. Cannon*, Utah Ct. App., No. 981194-CA, 12/2/99)

**Statutes and Ordinances—'Vexatious Litigators' —Access to Courts**

Ohio's "vexatious litigator" statute, Ohio Rev. Code Section 2323.52, impermissibly infringes the right of access to courts guaranteed by the state constitution's "open courts" provision, Art. I, Section 16, a majority of the Ohio Court of Appeals, Third District, held Nov. 24. Under the statute, a person who is found by a court to meet the statutory definition of "vexatious litigator" may be ordered to obtain the court's approval before instituting or continuing legal proceedings or making any application in ongoing proceedings. Under subsection 2323.52(F), the court may not grant approval unless it is "satisfied that the proceedings or application are not an abuse of process of the court in question and that there are reasonable grounds for the proceedings or application." The procedure established by the statute prevents direct access to the courts by a person deemed a vexatious litigator and fails to provide a reasonable and meaningful substitute for direct access, the majority concluded in an opinion written by Judge Stephen R. Shaw. The majority complained that subsection 2323.52(F) vests complete authority to determine the validity of virtually all of a litigant's statewide legal actions in one trial court. No appeal is permitted, so the trial court need not make a record of the grounds for its decision. Furthermore, the majority said, the structure of the statute makes clear that the trial court must make its determination prior to, and hence without, any sort of factfinding process. "In short," the majority concluded, "the statute allows a trial court to arbitrarily and summarily deny leave to proceed even *in another jurisdiction* upon a formally proper complaint that would ordinarily survive a motion to dismiss under Civ.R. 12(B)(6)." The majority also said that merely striking the language that makes such decision unappealable would not solve the constitutional problem;

Case 3:00-cv-01497-EMK-MP Document 3 Filed 11/27/00 Page 8 of 11



Jerry K. KILPATRICK, Petitioner,

v.

Samuel H. HOUSTON, Respondent.

No. 3:98CV282-RH.

United States District Court, N.D. Florida, Gainesville Division.

Feb. 23, 1999.

Federal prisoner petitioned for habeas corpus, challenging the refusal of the Bureau of Prisons to reduce his sentence based on his successful completion of an in-custody substance abuse treatment program. The District Court, Hinkle, J., held that Bureau of Prisons regulation which automatically excluded from eligibility for a sentence reduction any prisoner whose offense "involved the carrying, possession, or use of a firearm" was invalid.

Petition granted.

Prisons ⚖15(3)

Bureau of Prisons regulation which automatically excluded from eligibility for a sentence reduction any prisoner whose offense "involved the carrying, possession, or use of a firearm" was invalid. 28 C.F.R. § 550.58(a)(1)(vi)(B).

---

Jerry J. Kilpatrick, Eglin Air Force Base, FL, pro se.

Michael P. Finney, U.S. Attorney, Pensacola, FL, for respondent.

## *ORDER GRANTING WRIT OF HABEAS CORPUS*

HINKLE, District Judge.

Petitioner Jerry J. Kilpatrick, who is in ...al custody on his conviction of conspira... ...listribute methamphetamine in viola... ...U.S.C. § 846, challenges the refus... ...Bureau of Prisons to reduce his sentence based on his successful completion of an in-custody substance abuse treatment program. The Bureau denied Mr. Kilpatrick's request for a sentence reduction because a codefendant possessed a firearm in connection with the conspiracy offense, thus making Mr. Kilpatrick ineligible for a sentence reduction under the applicable Bureau regulation. Based on the controlling decision in *Byrd v. Hasty*, 142 F.3d 1395 (11th Cir. 1998), I hold the relevant portion of the regulation invalid and direct the Bureau to consider Mr. Kilpatrick's request for a sentence reduction in accordance with this ruling.

In 1994, Congress directed the Bureau to make appropriate substance abuse treatment programs available "for each prisoner the Bureau determines has a treatable condition of substance addiction or abuse." 18 U.S.C. § 3621(b). As an "[i]ncentive for prisoners' successful completion of treatment program," 18 U.S.C. § 3621(e)(2) (heading), Congress provided:

> The period a prisoner *convicted of a nonviolent offense* remains in custody after successfully completing a treatment program *may be reduced* by the Bureau of Prisons, but such reduction may not be more than one year from the term the prisoner must otherwise serve.

18 U.S.C. § 3621(e)(2)(B) (emphasis added). As the statute on its face made clear, the Bureau could reduce a sentence only if a prisoner was "convicted of a nonviolent offense." Further, by providing that sentences of such prisoners "may be reduced," not "shall be reduced," and by imprecisely delineating the period of reduction as "not ... more than one year," the statute clearly delegated at least some discretion to the Bureau with respect to its implementation of the statute.

In 1995, the Bureau attempted to implement the statutory provision for sentence reductions by adopting a regulation excluding from eligibility any prisoner whose offense was a "crime of violence." *See* 28 C.F.R. § 550.58 (1995).[1] In a program statement, the Bureau further restricted eligibility by defining "crime of violence" to include any crime for which the sentence was enhanced under United States Sentencing Guidelines § 2D1.1(b)(1). This rendered a prisoner ineligible for a sentence reduction if "a dangerous weapon (including a firearm) was possessed" in connection with the offense of conviction. *See* U.S.S.G. § 2D1.1(b)(1).[2]

In *Byrd v. Hasty*, 142 F.3d 1395 (11th Cir.1998), the Eleventh Circuit, like most courts that had considered the issue, squarely held that the Bureau exceeded its authority by excluding prisoners from eligibility based solely on § 2D1.1(b)(1) sentencing enhancements. The court based its ruling on its view of the statute's plain meaning and the Bureau's lack of authority to depart therefrom. The court ruled that Byrd, who like Mr. Kilpatrick in the case at bar was convicted of a drug trafficking offense and whose sentence was enhanced under § 2D1.1(b)(1) based on possession of a firearm, was not ineligible for a sentence reduction by reason of that enhancement. The court said:

> [W]e adopt the reasoning of those courts that have found that the BOP exceeded its authority. The statute, 18 U.S.C. § 3621(e)(2)(B), speaks only in terms of conviction. Byrd was convicted of conspiracy and possession with intent to distribute cocaine (violations of 21 U.S.C. §§ 846 and 841(a)(1)), *which are not crimes of violence*. Although Byrd received a sentencing enhancement under § 2D1.1(b)(1) of the Sentencing Guidelines, "[s]ection 3621(e)(2)(B) addresses the act of convicting, not sentencing or sentence-enhancement factors." *Downey [v. Crabtree*, 100 F.3d 662,] 668 [(9th Cir.1996)]. As a result, we conclude that the BOP *exceeded its statutory authority* when it categorically excluded from eligibility those inmates convicted of a non-violent offense who received a sentencing enhancement for possession of a firearm. *The BOP's interpretation of the 18 U.S.C. § 3621(e)(2)(B) is simply in conflict with the statute's plain meaning.*

*Byrd v. Hasty*, 142 F.3d 1395, 1398 (11th Cir.1998) (emphasis added).

The Bureau now has amended the regulation that was at issue in *Byrd* (and the case on which *Byrd* relied). The amended regulation changes the language but not the substance of the prior regulation; the Bureau has changed its substantive position not a whit. The new regulation excludes from eligibility for a sentence reduction any prisoner whose offense "involved the carrying, possession, or use of a firearm." 28 C.F.R. § 550.58(a)(1)(vi)(B) (1998). Under this language, as under the prior regulation and program statement at issue in *Byrd*, any prisoner whose sentence was enhanced under § 2D1.1(b)(1) is automatically ineligible for a sentence reduction; the standard set forth in the new regulation is substantively identical to the standard set forth in § 2D1.1(b)(1). Indeed, the sole basis on which the Bureau has denied Mr. Kilpatrick's request for a sentence reduction is that his sentence was enhanced under § 2D1.1(b)(1), thus establishing that his offense "involved the carrying, possession, or use of a firearm" within the meaning of the Bureau's regulation.[3]

It is true, as the Bureau notes, that the new regulation no longer uses the phrase "crime of violence." But the statute the

1. ...defined "crime of violence" by ...U.S.C. § 924(c)(3), which makes ...use to use or carry a firearm ...tion to" any "crime of vio... ...ime of violence" as defined ...include every drug traf... ...is clear not only from the definition of a "crime of violence" in § 924(c)(3) but also because § 924(c) makes it an offense to use or carry a firearm not only during and in relation to a "crime of violence" but also during and in relation to any "drug trafficking offense." Any interpretation of "crime of violence" that automatically included every "drug trafficking offense" would render totally superfluous Congress's reference in § 924(c) to any "drug trafficking offense."

2. Under § 2D1.1(b)(1), sentence enhancement for possession of a firearm is appropriate when a weapon is foreseeably possessed by a co-conspirator, even without the defendant's knowledge. *See, e.g., United States v. Otero*, 890 F.2d 366, 367 (11th Cir.1989). Accordingly, the effect of the Bureau's interpretation was to render ineligible for sentence reduction prisoners who, like Mr. Kilpatrick, did not possess a firearm, but whose co-conspirators foreseeably did.

3. The perfect match between the Bureau's new regulation and § 2D1.1(b)(1) is underscored by the facts of the case at bar. Mr. Kilpatrick did not himself carry, possess or use a firearm. A co-conspirator *did* possess a firearm, however, making enhancement of Mr. Kilpatrick's sentence proper under § 2D1.1(b)(1). *See, e.g., Otero*, 890 F.2d at 367. The Bureau has automatically applied its new regulation to Mr. Kilpatrick, confirming that the regulation has the same meaning as § 2D1.1(b)(1).

Bureau is charged with implementing still allows reduction of the sentence of a "prisoner convicted of a nonviolent offense." 18 U.S.C. § 3621(e)(2)(B). The plain meaning of this statute is still the same as it was when *Byrd* was decided. The Bureau's authority under that statute is still the same as it was when *Byrd* was decided.

The Eleventh Circuit squarely held in *Byrd* that the Bureau "exceeded its statutory authority when it categorically excluded from eligibility those inmates convicted of a nonviolent offense who received a sentencing enhancement for possession of a firearm." *Byrd*, 142 F.3d at 1398. If that was true then, it is true now. Although the language is different, the new regulation, like the old regulation and program statement, "categorically excluded from eligibility those inmates who received a sentencing enhancement for possession of a firearm," that is, those inmates whose offenses involved possession of a firearm. That the Bureau has now adopted the underlying substance of Sentencing Guidelines § 2D1.1(b)(1), rather than explicitly referring to that provision or to sentencing, is a distinction without a difference.

Further, in *Byrd* the Eleventh Circuit unequivocally ruled, as a basis of its holding, that 21 U.S.C. §§ 846 and 841(a)(1) "are not crimes of violence." *Byrd*, 142 F.3d at 1398. That was the court's interpretation of the statute (which makes eligible a prisoner convicted of a "nonviolent offense"), not simply the court's interpretation of the Bureau's regulation and program statement. That this is so is confirmed by the program statement itself, which clearly defined "crime of violence" as used by the Bureau to include any offense involving possession of a firearm (that is, any offense resulting in a sentence enhancement under § 2D1.1(b)(1)). Thus "crime of violence" under the Bureau's interpretation *did* include some violations of §§ 846 and 841; when the court unequivocally said violations of those sections "are not crimes of violence," it was talking about the statute, not the Bureau's different interpretation. The court therefore struck down the Bureau's interpretation, saying, "The BOP's interpretation of the 18 U.S.C. § 3621(e)(2)(B) is simply in conflict with the statute's plain meaning." *Byrd*, 142 F.3d at 1398.

The Bureau's contrary position would render *Byrd* a trivial criticism of the Bureau's drafting technique rather than a substantive ruling on the meaning of the statute and the scope of the Bureau's authority thereunder. If *Byrd* is to be relegated to such a meaningless role, it will have to be the Eleventh Circuit that does the relegating.

Whether a sentence reduction should be denied a person convicted of a drug trafficking offense who possessed a firearm (or whose co-conspirator foreseeably possessed a firearm) could be debated.[4] Whether that is a decision Congress made in the statute or delegated to the Bureau (that is, whether *Byrd* was correctly decided) could be debated. Whether the Eleventh Circuit *en banc* should reach a different result, or perhaps even whether a new panel of the Eleventh Circuit should use the Bureau's new language as an opportunity to revisit *Byrd*, could be debated. But whether a district court in this circuit should give full meaning to *Byrd's* own explicit reasoning and substantive holding is not reasonably subject to debate. The clear import of *Byrd* requires the same result in the case at bar.[5]

The only remaining issue is the relief that should follow. In *Byrd*, the Eleventh Circuit remanded the case to the district court "with instructions to refer the case to the Bureau of Prisons for consideration in accordance with this opinion." *Byrd*, 142 F.3d at 1398. The Bureau's continuing failure to comply with the import of *Byrd* has not yet risen to the point that a less deferential remedy should be implemented. A reasonable time limit, however, should be adopted.[6] Accordingly,

IT IS ORDERED:

The clerk shall enter judgment providing, "The petition for writ of habeas corpus is GRANTED. Respondent shall release the petitioner from custody unless, within 30 days, the Bureau has considered petitioner's request for a sentence reduction for successful completion of the Bureau's substance abuse program without regard to petitioner's co-conspirator's possession of a firearm during the offense of which petitioner was convicted." The court reserves jurisdiction to enforce this order.

4. On this it perhaps bears noting that a person who possessed (or whose co-conspirator foreseeably possessed) a firearm already will have had his or her sentence increased based on the firearm possession. A person whose co-conspirator foreseeably possessed a firearm will have had his or her sentence enhanced even if he or she did not know about the firearm. *See Otero*, 890 F.2d at 367. The reason for denying such a person the same incentive to obtain substance abuse treatment as other persons convicted of nonviolent offenses is less than clear.

5. It is true, as the Bureau notes, that in *Byrd* the Eleventh Circuit explicitly declined to address the validity of the Bureau's new regulation, which had been adopted before the *Byrd* decision was issued. *See Byrd*, 142 F.3d at 1398. The issue was not before the court, and the court thus properly declined to address it. That does not mean, however, that this court should now ignore the logical import of the *Byrd* court's decision.

6. Mr. Kilpatrick asserts that if he had been afforded a sentence reduction, he would already have been released. The Bureau has not disputed this. Time is therefore of the essence.

---



Bill D. GRAY, Plaintiff,

v.

WEBCO GENERAL PARTNERSHIP, a foreign partnership, Defendant,

No. 98-1077-CIV-T-17A.

United States District Court, M.D. Florida, Tampa Division.

Feb. 18, 1999.

Former employee, a male, brought employment discrimination and retaliatory termination action against former employer under Title VII, and Florida Whistleblower's Act. On motion to dismiss, the District Court, Kovachevich, J., held that: (1) direct evidence of discrimination was not separate cause of action from *McDonnell Douglas* formulation, and (2) Title VII retaliation claim did not preempt same claim under state law.

Motion granted in part, and denied in part.

**1. Civil Rights ⇐141**

Although plaintiff may establish prima facie case of employment discrimination either by presenting direct evidence of intentional discrimination, or by showing existence of circumstantial evidence which creates inference of discrimination, direct evidence is not separate cause of action. Civil Rights Act of 1964, § 701 et seq., as amended, 42 U.S.C.A. § 2000e et seq.

**2. Master and Servant ⇐34.1**
**States ⇐18.49**

Former employee's Title VII claim for retaliation did not preempt claim for retaliation under Florida's Whistleblower Act, absent express Congressional intent in Title VII to preempt state law, inference that Title VII regulated employment discrimination and retaliation law so comprehensively as to leave no room for supplementary state regulation, or provision of state law that conflicted with either plain language or intent of Title VII. Civil Rights Act of 1964, § 701 et seq., as amended, 42 U.S.C.A. § 2000e et seq.; West's F.S.A. §§ 448.101–448.105.

---

Jeffrey Michael Collins, Jeffrey M. Collins, P.A., Tampa, FL, for Bill D. Gray, plaintiff.

Karen M. Buesing, Michael S. Moyles, Zinober & McCrea, P.A., Tampa, FL, for Webco General Partnership, a foreign partnership, defendant.

*ORDER ON MOTION TO DISMISS COUNTS I AND IV OF COMPLAINT*

KOVACHEVICH, District Judge.

This cause is before the Court on Defendant's Motion to Dismiss Counts I and IV of the complaint (Dkt.4), and Plaintiff's response (Dkt.9).

*STANDARD OF REVIEW*

A court should not dismiss a complaint for failure to state a claim upon which relief can be granted unless it appears beyond doubt that the plaintiff can prove no set of facts

# LEGAL NEWS YOU CAN USE

by Joel Simberg & Kyle O'Dowd

We hope that these summaries are helpful, but please remember that reading a case summary is no substitute for reading the actual case. Reading the case or asking your attorney to read the case are the only ways to find out if it applies to your situation. Also, the case law may not apply to you if your case is in a different circuit. Always research the law in *your* circuit!

## APPEALS

***United States v. Raynor*, No. 97-1086 (D.D.C., Dec. 29, 1997)**

The government's standard plea agreement often requires the defendant, but not the government, to waive all rights to appeal any sentence imposed by the district court. At least one district court has said that it will no longer accept these one-sided waivers. The court's reasoning is that a defendant cannot make a knowing and intelligent waiver of his right to appeal a sentence when the sentence has not yet been imposed.

## BUREAU OF PRISONS

***Martin v. Gerlinski*, 133 F.3d 1076 (8th Cir. 1998)**

This is the latest case involving the BOP's residential drug abuse treatment program. Under 18 U.S.C. § 3621(e)(2)(B), prisoners who complete the treatment program are eligible for one year off their sentences if "convicted of a nonviolent offense." The prisoners in this case all received 2-level increases in their drug sentences under the Sentencing Guidelines' §2D1.1(b)(1) for possessing a dangerous weapon (the "gun bump"). The BOP denied the reductions on the basis of a program statement that classifies a drug offense with a gun bump as a crime of violence. The Eighth Circuit joined the other two circuits that have found the BOP's interpretation contrary to the plain language of the statute. *Accord Roussos v. Menifee*, 122 F.3d 159 (3d Cir. 1997); *Downey v. Crabtree*, 100 F.3d 662 (9th Cir. 1996). *Contra Venegas v. Henman*, 126 F.3d 760 (5th Cir. 1997).

***United States v. Workman*, 110 F.3d 915 (2d Cir. 1997)**

The district court may schedule fine payments, but not the Bureau of Prisons. The statute concerning fines (18 U.S.C. § 3572) does not permit the district court to delegate the scheduling of installment payments for fines to the BOP. Similarly, the Second Circuit held in another case that a district court may not leave to the probation officer the duty of fixing a restitution payment schedule. The court of appeals vacated the part of the sentence requiring the BOP to make a schedule for fine payments and remanded for resentencing.

## CRIMINAL HISTORY/CAREER OFFENDER

***United States v. Damon*, 127 F.3d 139 (1st Cir. 1997)**

District courts may not examine the actual facts of the crime to determine whether a prior offense is a crime of violence for sentencing purposes. This defendant's criminal history included a state conviction for aggravated criminal mischief. In calculating the criminal history, the district court found that the prior offense was a crime of violence because the defendant had attempted to burn his house down. The court of appeals reversed, stating that sentencing courts may not look beyond the generic nature of the prior offense (i.e., what the offense typically involves, as opposed to what the actual facts were). Since the subsection of the aggravated criminal mischief statute with which the defendant was charged does not ordinarily involve a serious potential risk of injury to another, it was not a crime of violence.

***United States v. Hicks*, 122 F.3d 12 (7th Cir. 1997)**

In determining whether a prior offense is a crime of violence, a district court may not peek behind a charging document that states an offense that is not a crime of violence. In this case, the district court applied a career offender enhancement because the defendant had been convicted of three prior burglaries. Although the burglaries were originally charged as "residential" burglaries of "dwellings," making them crimes of violence under the Sentencing Guidelines, the charges were amended to simple bur-

*continued on page 11*

U.S. GOVERNMENT MEMORANDUM
FCI - ELKTON

Date: May 12, 1998

From: Dr. B. Redondo

To: Mr. Bielawski # 46373-066

Re: 500 Hour Drug Program

Based on my initial review of your file, it appears you will be found ineligible for early release benefits as a result of a 2-point specific offense characteristic for possession of a weapon. There does not appear to be any additional excluding factors in your history.

Sincerely,

Dr. Redondo